## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JOAN BETTY DANZIGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 03-1508 (RMC)** |
| | ) | |
| **FORD MOTOR COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| **ALAN MERCADO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 04-363 (RMC)** |
| | ) | |
| **FORD MOTOR COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Ford Motor Company asks the Court to reconsider and reverse its ruling permitting Plaintiffs Joan Betty Danziger, individually and as the representative of her deceased husband, and Alan Mercado to amend their complaints to seek punitive damages.  The question revolves around which state's punitive damages law shall apply.  Concluding that its initial decision was in error, the Court will grant Defendant's Motion to Reconsider, vacate its previous Memorandum Opinion and Order, and deny the Plaintiffs' Motion to Amend the complaint to add claims for punitive damages.

## I. BACKGROUND

The facts relevant to this motion can be briefly summarized: Mrs. Danziger was driving her Ford Explorer on July 12, 2002, accompanied by her husband and Mr. Mercado. While on Interstate 80 in Keith County, Nebraska, the Explorer rolled over. Ms. Danziger suffered numerous injuries, some permanent, in the accident. Ms. Danziger's husband was ejected from the vehicle and died from his injuries. Mr. Mercado was also ejected from the vehicle and sustained permanent damage to his spinal cord.

Ms. Danziger and Mr. Mercado reside in the District of Columbia and Virginia, respectively. At the time of the accident, both resided in the District. Both also resided in the District at the time Ms. Danziger purchased the Explorer in Maryland. Ford, the sole defendant, is incorporated in Delaware but has its principal place of business in Michigan. Ford designed the Explorer in Michigan and manufactured it in Kentucky. Thus, any of six jurisdictions might have an interest in the question of punitive damages: the District of Columbia, Virginia, Maryland, Delaware, Michigan and Kentucky. The Court previously determined that Maryland had the greatest interest. *Danziger v. Ford Motor Co.*, Civil Action No. 03-1508 (RMC), Memorandum Opinion and Order at 7 (D.D.C. July 11, 2005). It is that conclusion that Ford asks the Court to reconsider.

## II. LEGAL STANDARDS

Motions to reconsider are routinely construed as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). *Emory v. Sec'y of the Navy*, 819 F.2d 291, 293 (D.C. Cir. 1987). Rule 59(e) permits a party to file a motion to alter or amend a judgment no later than ten days after the entry thereof. A motion to alter or amend a judgment pursuant to Rule 59(e) is not, however, "simply an opportunity to reargue facts and theories upon which a court has already ruled."

*New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (three-judge panel) (per curiam).  Nor

is it an avenue for a "losing party . . . to raise new issues that could have been raised previously."

*Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).  "A Rule 59(e) motion is

discretionary and need not be granted unless the district court finds that there is an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice."  *Fox v. Am. Airlines Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting

*Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)).

### III. DISCUSSION

This fact pattern would present a perfect law-school examination question were it not

so serious.  As regards punitive damages, which is a matter of state law, should the Court apply the

law of the District of Columbia, Virginia, Kentucky, Maryland, Nebraska or Michigan?  There are

two basic approaches to answering this question.  At common law, the doctrine of *lex loci delicti* —

"[t]he law of the place where the tort or other wrong was committed"[1] — applied.  Under that

approach, this question would not be a difficult one: the law of Nebraska would be used because the

accident occurred in Nebraska.  More recently, however, the Second Restatement of Conflict of

Laws adopted a test that applies the law of the state with "the most significant relationship to the

occurrence and the parties."  Restatement (Second) of Conflict of Laws § 145 (1971).  Section 145

of the Second Restatement provides:

> (1) The rights and liabilities of the parties with respect to an issue in
> tort are determined by the local law of the state which, with respect to that
> issue, has the most significant relationship to the occurrence and the parties
> under the principles stated in § 6.

---

[1]  Black's Law Dictionary 930 (8th ed. 2004).

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.*  In turn, § 6 of the Second Restatement provides that a court should follow the statutory directive of its own state on choice of law or, where none exists, look to, as pertinent here, the "relevant policies of the forum" and the "relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue."  *Id.* at § 6(2)(b), (c).

All parties agree that the District of Columbia employs a two-step "modified 'governmental interest analysis' " to determine which state's law applies to a claim.  *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 10 (D.D.C. 1995) (quoting *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988), and *Moore v. Ronald Hsu Const. Co.*, 576 A.2d 734, 737 (D.C. 1990)).  First, the Court must "evaluate the governmental policies underlying the applicable laws" of the interested states.  *Id.*  Second, if those interests conflict, the Court must determine "which jurisdiction's policy would be most advanced by having its law applied to the facts in the case."  *Id.*; *see also In re Air Crash Disaster at Washington, D.C.* (*In re Washington Air Crash*), 559 F. Supp. 333, 341-342 (D.D.C. 1983) ("The District of Columbia method of 'governmental interest analysis' directs the court first to identify the state policies underlying each law in conflict and second to decide which state's policy would be advanced by having its law apply.") (citing *Semler v. Psychiatric Inst. of Washington, D.C.*, 575 F.2d 922, 924 (D.C. Cir. 1978)).  While the specific analysis adopted in the

District of Columbia predates the 1971 publication of the Second Restatement,[2] the two approaches are similar, and the D.C. Circuit has looked to the Restatement factors in applying D.C. law. *See, e.g.*, *Hitchcock v. United States*, 665 F.2d 354, 360-61 (D.C. Cir. 1981).

Here, most of the potentially interested states have an insufficient interest to affect the analysis. Kentucky, the place of manufacture, has no interest in the question of punitive damages because the instant claim lies with allegedly poor design, not manufacturing defects. The District of Columbia, home of the Plaintiffs both when the Explorer was purchased and when the accident occurred, is interested in their compensatory recoveries but not punitive damages. *See Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 938-39 (D.D.C. 1984) ("Once the plaintiffs are made whole by recovery of the full measure of compensatory damages to which they are entitled under the law of their domiciles, the interests of those States are satisfied.") (quoting *In re Air Crash Disaster near Chicago, Illinois*, 644 F.2d 594, 613 (7th Cir. 1981)). Virginia, Mr. Mercado's home state both now and when suit was brought, might be thought to have some interest in Mr. Mercado's recovery if a shortfall would render his care a state responsibility; however, no party argues for application of Virginia law and it has no connection to the alleged actions giving rise to the lawsuit. Delaware is the state in which Ford is incorporated, but it has no other connection to any relevant activity. Nebraska is the where the injury occurred, but under the interest analysis applied in the District of Columbia, this fact is of minimal importance in a "fortuitous crash" case absent other connections or interests to tie the issue of punitive damages to that forum. *See In re Washington Air Crash*, 559 F. Supp. at 349 (recognizing that although "the state where the injury occurred does have some

---

[2] *See Tramontana v. S.A. Empresa de Viacao Aerea Rio Grandense*, 350 F.2d 468 (D.C. Cir. 1965).

interest in imposing liability on the wrongdoer," it is of "relatively minor importance" when a vehicle is merely "passing through" and the injury "might well have occurred in one of any number of states").

Thus, the two states with relevant interests to be considered are Michigan and Maryland. Michigan's interest arises because it is the state where Ford is headquartered and where the Explorer was designed; Michigan law precludes punitive damages in an effort to protect corporations within its borders, draw corporations to transact business in the state, and thereby augment the state's coffers. *See McAuley v. Gen. Motors Corp.*, 578 N.W.2d 282, 285 (Mich. 1998) ("It is well established that generally only compensatory damages are available [in Michigan]; punitive sanctions may not be imposed."), *overruled on other grounds by Rafferty v. Markovitz*, 602 N.W.2d 367 (Mich. 1999). Maryland, on the other hand, is interested because it is where Ford is alleged to have knowingly put a defective product into commerce. Maryland allows punitive damages in product liability suits to further its interest in deterring such conduct, and to protect its consumers from being harmed by known defects in products sold there. *See, e.g.*, *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992).

Thus it originally appeared to the Court that a true conflict existed between the law of Michigan and the law of Maryland. Upon reconsideration, however, the Court realizes its error. Maryland applies the traditional test of *lex loci delicti* and not the "state interest" test reflected in the Second Restatement. If the instant lawsuit — concerning an accident in Nebraska — were filed in Maryland, Maryland would apply the law of Nebraska, where the accident occurred. *Naughton v. Bankier*, 691 A.2d 712, 716 (Md. Ct. Spec. App. 1997) ("Maryland follows the conflict of laws principle of *lex loci delicti*. . . . This results in the application of the procedural law of the forum

state, and the application of the substantive law of the place (state) of the wrong."); *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 231-32 (Md. 2000) (noting that under *lex loci delicti* as applied in Maryland, "place of injury" is where the injury was suffered, not where the wrongful act took place); *see also Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986) (applying Maryland conflicts law, "[t]he place of injury is the place where the injury was suffered, not where the wrongful act took place"); *Frericks v. Gen. Motors Corp.*, 336 A.2d 118, 123-24 (Md. 1975) (applying North Carolina law, under *lex loci delicti*, in a products liability action where the alleged accident occurred in North Carolina). Nebraska does not allow punitive damages. *Miller v. Kingsley*, 230 N.W.2d 472, 474 (Neb. 1975) ("It is a fundamental rule of law in this state that punitive, vindictive, or exemplary damages are not allowed."); *Abel v. Conover*, 104 N.W.2d 684, 688 (Neb. 1960) ("This rule is so well settled that we dispose of it merely by the citation of cases so holding.").

Thus, if this suit were filed in Maryland, Maryland courts would apply the law of Nebraska, where the accident occurred, and no punitive damages would be available to the Plaintiffs. If this suit were filed in Michigan, Michigan courts would apply that state's law, and no punitive damages would be available to the Plaintiffs. Therefore, there is no true conflict. *See Long*, 877 F. Supp. at 11 (explaining that a "false conflict" occurs when "laws, though different, produce the same result when applied to the facts at issue").

## IV. CONCLUSION

In sum, District of Columbia law instructs the Court to apply the law of the state whose interest in the issue of punitive damages would be most advanced by having its law applied here. Although Michigan and Maryland have demonstrable interests, on these facts their laws do

not conflict: Maryland would apply Nebraska law, and both Michigan and Nebraska preclude punitive damages.  Moreover, in assessing Maryland's interest, the Court notes that its law expresses no interest in applying its principles to accidents that occur outside Maryland.  Maryland law protects those who have accidents on Maryland roads but not those — Maryland citizen or stranger — whose accidents occur elsewhere and who avail themselves of Maryland courts.

For these reasons, the Court finds that its initial conclusion was erroneous, and it will grant the motion to reconsider its initial decision and reverse its previous ruling.  *See Fox*, 389 F.3d at 1296.  Punitive damages are not available under either of two bases.  First, both Maryland and Michigan would deny a punitive damages claim arising from an accident in Nebraska.  Second, Maryland has no interest in applying its punitive damages principles to a tort case where the wrong was committed outside that state; under this latter reasoning, Michigan holds the greater interest in the question of punitive damages.

A separate Order accompanies this Memorandum Opinion.


Signed: October 18, 2005                                    /s/                                    
                                          ROSEMARY M. COLLYER
                                          United States District Judge